**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mally Gage,<br><br>        Plaintiff,<br><br>v.<br><br>Mayo Clinic,<br><br>        Defendant. | No. CV-22-02091-PHX-SMM<br><br>**ORDER** |

Pending before the Court is Defendant's Motion to Dismiss. (Doc. 15). For the following reasons, the Motion is granted.

**I.    BACKGROUND**

*Pro se* Plaintiff Mally Gage interviewed with Defendant Mayo Clinic[1] for a role as an inpatient pharmacist on March 3, 2022 and was offered the position on March 17. (Doc. 1 at 3). At the time, Defendant required all employees to be fully vaccinated against COVID-19, unless granted a religious exemption. (Id). Defendant provided an online form for employees and applicants to make religious exemption requests. (Id.) The form gave applicants 500 characters to explain their religious beliefs, required disclosure of any vaccinations received within the past five years, and asked whether the applicant's religious beliefs had changed over time. (Id. at 5-6). The form also asked applicants if they had any objection to the use of fetal cell lines. (Id. at 5). If answered affirmatively, the form then

---

[1] Defendant argues that Plaintiff in fact interviewed with non-party Mayo Clinic Arizona, a distinct corporate entity. (Doc. 15 at 13). The Court addresses this argument later in the Order.

listed between twenty to thirty drugs that use such cell lines. (Id.) If an applicant used any of these drugs, the form presented them with two options: they could state that they would stop taking the drugs and "act consistent with [their] religious beliefs" or continue taking the drugs and admit that their beliefs were insincere. (Id. at 5-6).

Rather than fill out the online form, Plaintiff submitted to Defendant her own two-page request for a religious exemption along with an explanation for her refusal to fill out the online form. (Id. at 3, 6). On March 22 Plaintiff was informed that Defendant's Religious Exemption Committee would not address her exemption request and would only accept such a request through the online form. (Id. at 3). On March 23, Plaintiff informed Defendant that she would not be submitting her exemption request through the online form and planned to submit an Equal Employment Opportunity Commission ("EEOC") charge, which she submitted soon after. (Id. at 3-4). Later that day, Defendant completed a Post Offer Placement Assessment during which Plaintiff stated that she was 24 weeks pregnant. (Id. at 4). On March 25, Defendant left Plaintiff a voicemail stating that she would be required to fill out the online exemption form as a term of employment. (Id.) In response, Plaintiff partially filled out the online exemption form. (Id.) On March 28, Defendant informed Plaintiff that it would only accept the online exemption form filled out in its entirety. (Id.) After Plaintiff repeated that she would not fill out an online form that she deemed to be "illegal," Defendant terminated her employment. (Id. at 4-5).

On December 12, 2022, Plaintiff filed a Complaint in this Court. (Doc. 1). On March 24, 2023, Defendant filed a Motion to Dismiss (Doc. 15), which is now fully briefed (Doc. 16 and 17).

## II.  LEGAL STANDARD

Courts must liberally construe the pleadings of *pro se* plaintiffs. Draper v. Rosario, 836 F.3d 1072, 1089 (9th Cir. 2016). Yet such pleadings must still comply with recognized pleading standards. Ghazali v. Moran, 46 F.3d 52, 52 (9th Cir. 1995). A pleading must contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). The pleading must "put defendants fairly

on notice of the claims against them." McKeever v. Block, 932 F.2d 795, 798 (9th Cir. 1991). While Rule 8 does not demand detailed factual allegations, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause action, supported by mere conclusory statements, do not suffice." Id. Motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

If a motion to dismiss based on Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citations and quotations omitted).

**III.   DISCUSSION**

Plaintiff alleges that Defendant terminated her employment based on "compounding prejudices"— that is, that it discriminated against her based on both her religious beliefs and her pregnancy. (Doc. 1 at 11). Plaintiff's Complaint presents multiple claims related to religious discrimination and a claim for pregnancy discrimination. Defendant argues that each claim should be dismissed for failure to state a claim upon which relief can be granted. (Doc. 15 at 1).

   **a. Religious Discrimination**

Plaintiff brings a cause of action for religious discrimination. (Doc. 1 at 8). Although the Complaint does not specify a theory of religious discrimination, the facts alleged suggest potential claims under Title VII of the Civil Rights Act of 1964.[2] Title VII prohibits

---

[2] The Complaint makes multiple references to 29 C.F.R. 1605—federal regulations that

an employer from "refus[ing] to hire . . . any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religious, sex or national origin . . . ." 42 U.S.C. § 2000e(a)(1). Specifically, the Complaint suggests Title VII claims of disparate treatment and failure to accommodate. The Court will address each in turn.

### i. Disparate Treatment

To establish a prima facie case of disparate treatment, Plaintiff must show that "(1) [s]he is a member of a protected class; (2) [s]he was qualified for [her] position; (3) [s]he experienced an adverse employment action; and (4) similarly situated individuals outside [her] protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." Peterson, 358 F.3d at 603.

Here, Plaintiff has failed to adequately plead elements one and four. Although the Complaint refers to Plaintiff's "religious beliefs," Plaintiff does not describe her religious beliefs, allege membership in a religious group, or otherwise explain how she is a member of a protected class. Neither does the Complaint allege facts showing that similarly situated individuals outside of her protected class were treated more favorably. The Complaint's only reference to similarly situated individuals is its allegation that "Mayo Clinic did not demand others outside of Ms. Gage's protected group" agree to masking, frequent PCR testing, and "other measures as COVID-19 and business circumstances warrant." (Doc. 1 at 6). Essentially, Plaintiff is arguing that vaccinated applicants or employees were treated more favorably than unvaccinated applicants or employees because the latter were subject to additional safeguards against the spread of COVID-19. However, those who have not been vaccinated against COVID-19 are not a "protected group" under Title VII. 42 U.S.C. § 2000e-2(a). As such, Plaintiff has failed to establish a prima facie case of disparate treatment.

---

summarize the EEOC's guidelines to claims of religious discrimination under Title VII. (Doc. 1 at 2, 4, 6 8). However, these guidelines do not themselves provide Plaintiff a cause of action and are not binding on this Court.

### ii. Failure to Accommodate

Title VII requires employers to reasonably accommodate an applicant's sincerely held religious beliefs should they conflict with a job requirement. See Heller v. EBB Auto Co., 8 F.3d 1433, 1437 (9th Cir. 1993). Courts employ a two-part framework to analyze claims of failure to accommodate. First, a plaintiff must establish a prima facie claim for failure to accommodate by showing that "(1) [s]he had a bona fide religious belief, the practice of which conflicts with an employment duty; (2) [s]he informed [her] employer of the belief and conflict; and (3) the employer discharged, threatened, or otherwise subjected [her] to an adverse employment action because of [her] inability to fulfill the job requirement." Peterson v. Hewlett-Packard Co., 358 F.3d 599, 606 (9th Cir. 2004) (citing Heller, 8 F.3d at 1438. Once a plaintiff has established a prima facie case, the employer must then "establish that it initiated good faith efforts to accommodate the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship". Id. (citation omitted).

Here, Plaintiff fails to plead facts supporting the first element—that she had a bona fide religious belief, the practice of which conflicts with an employment duty. As explained above, Plaintiff does not explain her religious beliefs. Nor does she explain how practicing them conflicted with her employment duties at the Mayo Clinic. A threadbare reference to her "religious beliefs" cannot suffice to meet this element at the motion to dismiss stage. See Iqbal, 556 U.S. at 678.

An accommodation is reasonable under Title VII when it "eliminates the conflict between employment requirements and religious practices." Ansonia Bd. Of Educ. V. Philbrook, 479 U.S. 60, 68 (1986). Here, the Court is unable to assess whether Mayo Clinic's offered accommodation eliminated the conflict between its employment requirements and Plaintiff's religious practice because Plaintiff has not explained what her religious practices are.

Because Plaintiff has failed to allege facts supporting her claims of religious discrimination under Title VII, the Court will grant Defendant's Motion to Dismiss as to

these claims.

### b. Retaliation

Plaintiff also makes a claim of "Religious Retaliation." (Doc. 1 at 11). For this claim, Plaintiff must show that: (1) she engaged in protected activity, (2), she suffered an adverse employment action, and (3) the two are causally linked. See Porter v. Cal. Dep't of Corr., 419 F.3d 885, 894 (9th Cir. 2005). To establish a causal connection between her protected activity and the adverse actions, a plaintiff may allege direct or circumstantial evidence from which causation can be inferred, such as an employer's "pattern of antagonism following the protected conduct," Id. at 895, or the temporal proximity of the protected activity and the occurrence of the adverse action. Pardi v. Kaiser Found. Hosps., 389 F.3d 840, 850 (9th Cir. 2004); Bell v. Clackamas Cty., 341 F.3d 858, 865 (9th Cir. 2003).

Here, Plaintiff alleges sufficient facts to establish the first two elements of a retaliation claim. She engaged in the protected activity of filing a claim with the EEOC and suffered the adverse employment action of termination. However, Plaintiff fails to plead facts suggesting a causal link between her filing with the EEOC and her termination. First, Plaintiff's factual allegations do not suggest a "pattern of antagonism" following her EEOC Complaint. Although Plaintiff's employment was terminated after her EEOC Complaint, Plaintiff's own factual allegations suggest that Defendant terminated her employment because she failed to complete the online religious exemption request form—not because she filed a complaint with the EEOC. (Doc. 1 at 4). Indeed, Defendant informed Plaintiff that she would need to complete the entire form before she ever mentioned an EEOC complaint. (Id. at 4-5). See Richards v. City of Seattle, 32 Fed. App'x. 452, 455 (9th Cir. 2002) ("[a]n employer who has made an employment decision is not liable for unlawful retaliation merely because it decides to follow through with its decision even after discovering that the employee has recently engaged in protected activity") (citing Cohen v. Fred Meyer, Inc., 686 F.2d 793, 797 (9th Cir. 1982)).

Plaintiff has failed to allege facts from which the Court can reasonably infer

Defendant's liability as to her retaliation theory. Accordingly, the Court must dismiss this claim without prejudice.

### c. Pregnancy Discrimination

Plaintiff's third and final cause of action is pregnancy discrimination. (Doc. 1 at 11). Under the Pregnancy Discrimination Act, "for all Title VII purposes, discrimination based on a woman's pregnancy is, on its face, discrimination because of her sex." Newport News Shipbuilding & Dry Dock Co. v. EEOC, 462 U.S. 669, 684 (1983). Therefore, to establish a prima facie case of pregnancy discrimination, Plaintiff must establish a prima facie case of sex discrimination, showing that: (1) she belongs to a protected class; (2) she was qualified for her position; (3) she was subject to an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably." Davis v. Team Elec. Co., 520 F.3d 1080, 1090 (9th Cir. 2008). These are the same elements as those of Plaintiff's disparate treatment claim.

Unlike with her disparate treatment claim based on her religion, Plaintiff has pled sufficient facts to meet the first element—that she was pregnant at the time. However, as with her disparate treatment claim, she has failed to meet element four—that similarly situated individuals outside her protected class were treated more favorably. Indeed, the Complaint is devoid of any reference to non-pregnant individuals whose employment was terminated for failure to fill out the online religious exemption request form. As such, the factual allegations do not allow the Court to draw the reasonable inference that Defendant is liable under this claim. The Court must therefore grant Defendant's Motion to Dismiss as it relates to Plaintiff's claim for pregnancy discrimination.

### d. Proper Defendant

Defendant argues that the Complaint has not named the proper Defendant. (Doc. 15 at 13-14). Defendant contends that Plaintiff applied for employment and otherwise interacted with non-party Mayo Clinic Arizona, a corporate entity distinct from Defendant Mayo Clinic.

In response, Plaintiff alleges that Defendant and defense counsel have been less than

clear about the distinction between the two corporate entities. (Doc. 16 at 4-5). However, each of Defendant's filings has been clear in its insistence that the proper named Defendant is Mayo Clinic Arizona, not Mayo Clinic. (Doc. 11 at 1; Doc. 15 at 13-14; Doc. 17 at 7-8).

Because the Court is dismissing Plaintiff's Complaint based on its failure to state a claim upon which relief may be granted, the Court will not rule on whether Defendant is the proper Defendant. However, to the extent that Plaintiff acknowledges that the proper Defendant should be Mayo Clinic Arizona,[3] any future amended complaint should reflect this. Plaintiff may substitute Mayo Clinic Arizona for Mayo Clinic in any future filings, if she so chooses.

### e. Defendant's Compliance with the Meet and Confer Process

Finally, Plaintiff contends that Defendant failed to satisfy the meet and confer requirement established by Local Rule of Civil Procedure 12.1(c) before filing their Motion to Dismiss. (Doc. 16 at 5, 13).

Local Rule 12.1(c) provides that a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6) will not be considered unless "the moving party includes a certification that, before filing the motion, the movant notified the opposing party of the issues asserted in the motion and the parties were unable to agree that the pleading was curable in any part by a permissible amendment offered by the pleading party." LRCiv. 12.1(c). This notice may be made personally, telephonically, or in writing. Id. The rule requires "adequate opportunity to confer." Nees v. City of Phoenix, No. CV-21-01134-PHX-GMS, 2022 WL 110188, at *1 (D. Ariz. Jan. 12, 2022).

In response to Plaintiff's claims, Defendant has attached email correspondences between defense counsel and Plaintiff. (Doc. 17-1). These emails clearly establish that Plaintiff was put on notice of the issues that Defendant planned on raising in its Motion to Dismiss and establish that the parties conferred about these issues. On February 27, 2023, at Plaintiff's request, Defendant sent her an email outlining six specific bases for the Motion to Dismiss, ahead of a scheduled phone call to discuss the issues. (Doc. 17-1 at 2).

---

[3] Plaintiff states that she is "willing to act in good faith and . . . add parties . . . ." (Doc. 16 at 14).

Plaintiff had an adequate opportunity to confer with Defendant during that phone call on March 2, as well as over email on the days before and after the phone call. As such, Defendant has met its meet and confer obligations under Local Rule 12.1(c).

### IV.     CONCLUSION

For the reasons explained above, the Court cannot reasonably infer Defendant's liability based on Plaintiff's factual allegations and Plaintiff has therefore failed to state a claim upon which relief may be granted. As such, the Court must Plaintiff's Complaint without prejudice. Because these deficiencies could potentially be cured by the allegation of other facts, Plaintiff must be granted leave to amend her Complaint.

Accordingly,

**IT IS HEREBY ORDERED granting** Defendant's Motion to Dismiss. (Doc. 15).

**IT IS FURTHER ORDERED dismissing without prejudice** Plaintiff's Complaint. (Doc. 1).

**IT IS FURTHER ORDERED granting** Plaintiff leave to amend her Complaint. If she so chooses, Plaintiff may file an amended complaint, no later than May 19, 2023.

Dated this 3rd day of May, 2023.

_____
Honorable Stephen M. McNamee
Senior United States District Judge