**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mally Gage,<br><br>           Plaintiff,<br><br>v.<br><br>Mayo Clinic, et al.,<br><br>           Defendants. | No. CV-22-02091-PHX-SMM<br><br>**ORDER** |

Pending before the Court is Defendants' Motion to Dismiss Plaintiff's Amended Complaint. (Doc. 25). The Motion has been fully briefed. (Docs. 25, 26, 29). For the following reasons, the Court grants Defendants' Motion to Dismiss.

**I.     BACKGROUND**

*Pro se* Plaintiff Mally Gage interviewed for and was offered a position as an inpatient pharmacist with Defendant Mayo Clinic Arizona ("Defendant") in March of 2022. (Doc. 19 at 3). At the time, Defendant required all employees to be fully vaccinated against COVID-19 unless granted a religious exemption (Id. at 3–4). Defendant provided new employees with a Religious Accommodation Request Form ("Accommodation Form") through which employees could request an exemption from the requirement. (Id. at 2). The Accommodation Form gave applicants 500 characters to explain their religious beliefs, required disclosure of any vaccinations received within the past five years and asked whether the applicant's religious beliefs had changed over time. (Id.) The Accommodation Form also asked applicants if they had any objection to the use of fetal cell lines. (Id.) If

1 answered affirmatively, the Accommodation Form then listed between twenty to thirty
2 drugs that use such cell lines. (Id.) If any applicant confirmed the use of any of these drugs,
3 the Accommodation Form presented them with two options: they could state that they
4 would stop taking the drugs and "act consistent with [their] religious beliefs" or continue
5 taking the drugs and admit that their beliefs were insincere. (Id.) The Accommodation
6 Form also, Plaintiff alleges, required "the forfeiture of rights including but not limited to
7 agreeing to disparate treatments, forgoing additional Requests for Accommodations and
8 agreement to possible termination." (Id. at 2).

9 Rather than fill out the provided form, Plaintiff submitted to Defendant her own two-
10 page request for a religious exemption along with an explanation for her refusal to fill out
11 the online Accommodation Form. (Id. at 4, 9, 11). On March 22, Plaintiff was informed
12 that Defendant's Religious Exemption Committee would not address her exemption
13 request and would only accept such a request through the online Accommodation Form.
14 (Id. at 4). On March 23, Plaintiff informed Defendant that she would not be submitting her
15 exemption request through the Accommodation Form and that she planned to submit an
16 Equal Employment Opportunity Commission (EEOC) charge, which she submitted soon
17 after. (Id.) Later that day, Defendant completed a Post Offer Placement Assessment during
18 which Plaintiff stated that she was 24 weeks pregnant. (Id. at 5). On March 25, Defendant
19 left Plaintiff a voicemail stating that she would be required to fill out the Accommodation
20 Form as a term of employment. (Id.) In response, Plaintiff partially filled out the
21 Accommodation Form. (Id. at 6). On March 28, Defendant informed Plaintiff that it would
22 only accept the Accommodation Form filled out in its entirety. (Id.) After Plaintiff repeated
23 that she would not fill out an online form that she deemed to be illegal, Defendant
24 terminated her employment. (Id. at 6–7).

25 On December 12, 2022, Plaintiff filed a Complaint in this Court. (Doc. 1). On March
26 24, 2023, Defendant filed a Motion to Dismiss for Failure to State a Claim. (Doc. 15). This
27 Court granted the Motion on May 3, 2023, dismissing Plaintiff's complaint and granting
28 Plaintiff leave to amend. (Doc. 18). Plaintiff filed a First Amended Complaint (FAC) on

May 19, 2023, (Doc. 19), adding Defendant Mayo Clinic Arizona, and Defendants filed a Motion to Dismiss Plaintiff's FAC on the same grounds on July 24, 2023. (Doc. 25). It is this Motion to Dismiss that is now before the Court.

## II.  LEGAL STANDARD

Courts must liberally construe the pleadings of *pro se* plaintiffs. Draper v. Rosario, 836 F.3d 1072, 1089 (9th Cir. 2016). Yet such pleadings must still comply with recognized pleading standards. Ghazali v. Moran, 46 F.3d 52, 52 (9th Cir. 1995). A pleading must contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). The pleading must "put defendants fairly on notice of the claims against them." McKeever v. Block, 932 F.2d 795, 798 (9th Cir. 1991). While Rule 8 does not demand detailed factual allegations, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause action, supported by mere conclusory statements, do not suffice." Id.

Motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). In evaluating a motion to dismiss, a court will "accept the factual allegations of the complaint as true and construe them in the light most favorable to the plaintiff." AE ex rel. Hernandez v. County of Tulare, 666 F.3d 631, 636 (9th Cir. 2012).

## III.  DISCUSSION

As an initial matter, the Court will address Plaintiff's arguments regarding *pro se* pleading standards. Plaintiff argues in her Response to Defendants' Motion to Dismiss that she is wrongly being subjected to heightened pleading standards as a *pro se* litigant. (Doc. 26 at 1).

The Supreme Court held in Swierkiewicz v. Sorema N.A. that "an employment discrimination plaintiff need not plead a prima facie case of discrimination." 534 U.S. 506, 508 (2002). Instead, plaintiffs were only required to state a short and plain statement of the claim sufficient to "give the defendants fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957). However, the pleading standard articulated in Conley—and relied upon in Swierkiewicz—is no longer the standard for pleading a cause of action. The Supreme Court in Twombly raised the standards for pleading, holding that plaintiffs must plead enough facts to state a claim for relief which is plausible on its face. Twombly, 550 U.S. at 547. The Supreme Court in Iqbal then applied the standard it articulated in Twombly to all civil actions. 556 U.S. at 678.

The Ninth Circuit in Starr v. Baca articulated the principals in common between Swierkiewicz and the subsequent decisions:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

652 F.3d 1202, 1216 (9th Cir. 2011). Thus, although Plaintiff need not include "heightened fact pleading of specifics," Plaintiff still must allege facts that state a plausible claim for relief. Id.

Though Plaintiff is correct in distinguishing between standards for summary judgment and Rule 12 motions to dismiss, Plaintiff's contention that she is being subjected to inflated pleading requirements is misplaced. There is no "expert legal theory" being required of Plaintiff. Rather, specific causes of action—such as religious discrimination under Title VII—can be pleaded under various theories supporting a claim for relief, and different theories require distinct allegations in order to comprise a viable cause of action. Simply stating that she was discriminated against does not establish a claim which "is plausible on its face" and cannot survive a 12(b)(6) motion to dismiss.

Plaintiff is correct in that she does not need to prove a prima facie case at this point. See Swierkiewicz, 534 U.S. at 510–11 ("This Court has never indicated that the requirements for establishing a prima facie case under McDonnell Douglas also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss."). However, Plaintiff still must plead a *plausible* claim for relief, which requires examining the substance of Plaintiff's allegations. If Plaintiff does not allege facts that support a claim of employment discrimination, the Court cannot find that Plaintiff has stated a plausible claim for relief. Plaintiff's pleadings are construed liberally as a *pro se* plaintiff, but Plaintiff must still allege more than legal conclusions.

### A. Religious discrimination

Plaintiff raises a cause of action for religious discrimination under Title VII in her FAC. (Doc. 19). Claims under Title VII for religious discrimination may be asserted under various theories, the most common being disparate treatment and failure to accommodate. See Peterson v. Hewlett-Packard Co., 358 F.3d 599, 603 (9th Cir. 2004). As with Plaintiff's first Complaint, Plaintiff does not delineate a specific theory of discrimination under Title VII, but Plaintiff's FAC suggests both failure to accommodate and disparate treatment claims. Defendant moves to dismiss both religious discrimination claims on the grounds that Plaintiff has again failed to state a claim upon which relief can be granted. (Doc. 25). The Court evaluates Plaintiff's claims in turn.

#### 1. Failure to Accommodate

Title VII requires employers to reasonably accommodate an applicant's sincerely held beliefs should those beliefs conflict with a job requirement. Groff v. DeJoy, 143 S. Ct. 2279, 2287–88 (2023). Such an accommodation is required unless it "would result in substantial increased costs in relation to the conduct of [the employer's] particular business." Id. at 2295. Courts employ a two-part burden-shifting framework to analyze failure to accommodate claims. First, a plaintiff must show that "(1) [s]he had a bona fide religious belief, the practice of which conflicts with an employment duty; (2) [s]he informed [her] employer of the belief and conflict; and (3) the employer discharged,

threatened, or otherwise subjected [her] to an adverse employment action because of [her] inability to fulfill the job requirement." Peterson, 358 F.3d at 606. Once a plaintiff has established a prima facie case, the employer must then "establish that it initiated good faith efforts to accommodate the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." Id. (citation omitted).

As an initial matter, it is not the Court's purpose at this stage of the proceedings to render judgment on whether Plaintiff's beliefs are sufficiently tied to the particular tenets of her religion. See Thomas v. Review Bd., 450 U.S. 707, 714 (1981) ("[T]he resolution of [whether a belief is religious] is not to turn upon a judicial perception of the particular belief or practice in question; religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit . . . protection."). In evaluating whether a plaintiff has sufficiently pleaded a sincerely held religious belief, the Court must avoid "second-guessing the reasonableness of an individual's assertion that a requirement burdens her religious beliefs." Bolden-Hardge v. Off. of Cal. State Controller, 63 F.4th 1215, 1223 (9th Cir. 2023). The role of the Court is instead to determine whether Plaintiff "has alleged an actual conflict" between her religious beliefs and an employment requirement. Id. Conversely, the Court is not required to "take plaintiffs' conclusory assertions of violations of their religious beliefs at face value." Id.

In a "Legal Dossier" Plaintiff sent to Defendants in lieu of completing the religious exemption form, Plaintiff describes herself as a devoted Christian.[1] (Doc. 19 at 39). Plaintiff believes that "God has given [her] direction to abstain from [the COVID-19] vaccine." (Id.) Plaintiff believes, per her interpretation of Biblical passages, that she must submit to her husband, who "leads in abstaining" from vaccination. (Id.) Plaintiff believes that her body is a temple for the Holy Spirit and that the "immoral and unethical" use of fetal stem cells in development of the COVID-19 vaccine renders the vaccines "unrighteous for [Plaintiff] to put in [her] body." (Id.)

---

[1] Plaintiff has attached this document as one of numerous exhibits to her Amended Complaint. Exhibits are considered as "part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

Several recent cases have addressed religious objections to COVID-19 vaccination based on the use of fetal stem cells during development of the available vaccines, with varying results. Compare Kiel v. Mayo Clinic Health Sys. S.E. Minn., Nos. 22-1319 et al., 2023 WL 5000255, at *8–10 (D. Minn. Aug. 4, 2023) (finding that plaintiffs had not pleaded bona fide religious beliefs because they failed to tie their opposition to fetal cell use to particularized religious beliefs), and Winans v. Cox Auto., Inc., No. 22-3826, 2023 WL 2975872, at *4 (E.D. Penn. Apr. 17, 2023) (finding that plaintiff failed to plead a sincerely held religious belief), with Algarin v. NYC Health + Hosp. Corp., No. 22-8340, 2023 WL 4157164, at *7 (S.D.N.Y. June 23, 2023) (finding that plaintiff pleaded a sincerely held religious belief), Corrales v. Montefiore Med. Ctr., No. 22-1329, 2023 WL 2711415, at *5–6 (S.D.N.Y. Mar. 30, 2023) (finding that plaintiff pleaded a prima facie case of discrimination), and Keene v. City & Cnty. of S.F., No. 22-16567, 2023 WL 3451687, at *2 (9th Cir. May 15, 2023) (finding that district court erred in holding that plaintiffs had failed to assert sincere beliefs because their beliefs were not scientifically accurate).

Bearing in mind that the burden for asserting a conflict is "fairly minimal," see Bolden-Hardge, 63 F.4th at 1223, the Court finds that Plaintiff has alleged a "bona fide" religious belief which is sufficient to overcome a 12(b)(6) motion to dismiss. See Keene, 2023 WL 3451687, at *2 ("A religious belief need not be consistent or rational to be protected under Title VII, and assertion of a sincere religious belief is generally accepted."). Though Plaintiff raises moral and ethical points that appear to be rooted in personal, rather than religious, beliefs, Plaintiff has asserted that she holds a sincere belief that conflicts with Defendant Mayo Clinic's policy, and the Court will not second-guess Plaintiff's assertions.

Defendants do not dispute in the Motion to Dismiss that Plaintiff has sufficiently pleaded the second and third elements of a failure to accommodate claim, and so the Court will not address those here.

Having found that Plaintiff has alleged a prima facie failure to accommodate claim,

the burden then shifts to Defendants to contend that good faith efforts were made to accommodate Plaintiff's beliefs, or that Defendants could not make such efforts without undue hardship. See Peterson, 358 F.3d at 606.

An employer has a duty to offer a potential accommodation when requested by an employee for religious reasons. Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 74 (1977); Opuku-Boateng v. California, 95 F.3d 1461, 1467 (9th Cir. 1996). If the proposed accommodation "fails to eliminate the affected employee's religious conflict, the employer must implement an alternative accommodation proposed by the employee, unless the employer proves that the accommodation would cause 'undue hardship' to the employer." Am. Postal Workers Union, S.F. Loc. v. Postmaster Gen., 781 F.2d 772, 776 (citing Burns, 589 F.2d at 407). However, "although the statutory burden to accommodate rests with the employer, the employee has a correlative duty to make a good faith attempt to satisfy [her] needs through means offered by the employer. In other words, a reasonable accommodation need not be on the employee's terms only." Am. Postal Workers Union, 781 F.2d at 777.

The inquiry into whether Defendants made good faith efforts to accommodate Plaintiff's beliefs begins with the question of whether Defendants offered a potential accommodation to Plaintiff. However, Defendants do not argue that Defendants offered an accommodation, instead, Defendants argue that Plaintiff's claims are foreclosed by the fact that Plaintiff failed to utilize Defendants' established procedure—here, the Accommodation Form—for requesting a religious accommodation. (Doc. 25 at 6–8).[2] (Id.) Defendants cite to several cases to support the assertion that employees must follow an employer's accommodation request process. See Somos v. Classic MS, LLC, No. 1:22 CV 1081, 2022 WL 4483917, at *3 (N.D. Ohio Sept. 27, 2022); Miceli v. JetBlue Airways Corp., 914 F.3d 73, 82–83 (1st Cir. 2019); Vitti v. Macy's Inc., 758 F. App'x 153, 157–58

---

[2] Defendant argues that there was "no obligation to engage in the interactive process" because Plaintiff failed to submit the Accommodation Form. The Court notes that Plaintiff has also raised arguments concerning a required interactive process. (Doc. 19 at 4, 6, 10). The interactive process is a requirement for accommodations made under the Americans with Disabilities Act. See Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1089 (9th Cir. 2002). The Ninth Circuit has not extended the requirement to religious accommodations.

- 8 -

(2d Cir. 2018); Christianson v. Boeing Co., Case No. C20-1439RSM, 2022 WL 1486432, at *3; Bresloff-Hernandez v. Horn, 05 Vic. 0384 (JGK), at *25–26 (S.D.N.Y. Sept. 21, 2007); Lundquist v. Univ. of South Dakota Sanford Sch. of Med., No. 09-4147-RAL, 2011 WL 5326074, at *8–9 (D.S.D. Nov. 4, 2013); Aycox v. City of Gainesville, No. 1:10CV51-WS-GRJ, 2013 WL 5676591, at *6 (N.D. Fla. Oct. 17, 2013).

The cases which Defendants cite are distinguishable from the facts of this case. As an initial matter, most of the cases are disability accommodation cases, not Title VII religious accommodation cases. See, e.g., Miceli, 914 F.3d at 82–83; Vitti, 758 F. App'x at 157–58; Christianson, 2022 WL 1486432, at *3. These cases are also distinguishable because the employers' request processes and procedures do not appear to require the employee to agree to terms of an accommodation; they are wholly procedural processes.

Defendants have additionally referenced the EEOC's own Religious Accommodation Request Form—available on the EEOC website—to support Defendants' requirement that employees complete a standardized form. (Doc. 25 at 8); Equal Opportunity Emp. Comm'n, Religious Accommodation Request Form, https://perma.cc/3XV9-TM6S. The EEOC's form is irrelevant to the Court's analysis. The form's terms appear to be wholly dissimilar to Mayo Clinic Arizona's Accommodation Form; the EEOC form contains no character limit for applicants to express the sincerity of their beliefs, no requirement that an employee agree to stop medications inconsistent with their beliefs, no requirement that an employee submit proof of the duration of their beliefs, and no requirement that an employee accept terms and conditions of an accommodation. In lieu of providing Defendants' own form to the Court, Defendants apparently seek to validate Mayo Clinic Arizona's Accommodation Form via an entirely different and decidedly less demanding form.

While Defendants characterize the Accommodation Form as a "preliminary inquiry into whether an accommodation should be considered," the Accommodation Form required applicants to agree to specific terms and conditions of an exemption. Because of this, the Accommodation Form goes beyond the sort of accommodation request processes

considered in the cases to which Defendants cite. Rather, the Court finds that the Form constitutes a proposed accommodation on the part of Defendants.

The next inquiry is whether Defendants' proposed accommodation would have removed the conflict between Plaintiff's work requirements and religious beliefs. The purpose of Defendant's Accommodation Form was to provide employees with an avenue to avoid COVID-19 vaccination for religious reasons. Thus, Defendants' Accommodation Form, if submitted and approved, would have permitted Plaintiff to forgo COVID-19 vaccination. Accordingly, Defendants' proposed accommodation would have removed the conflict between Plaintiff's work requirements and Plaintiff's bona fide religious beliefs.

The Court next considers whether Defendants' offered accommodation was reasonable. See Am. Postal Workers Union, 781 F.2d at 776. ("Where an employer proposes an accommodation which effectively eliminates the religious conflict faced by a particular employee . . . the inquiry under Title VII reduces to whether the accommodation reasonably preserves the affected employee's employment status."). A reasonable accommodation is one which itself is not discriminatory, see Ansonia Board of Education v. Philbrook, 479 U.S. 60, 70–71 (1986), and one which does not adversely impact the employee's employment status. See Am. Postal Workers Union, 781 F.2d at 776–77; see also 42 U.S.C. § 2000e-2(a)(2). Title VII requires an employer to accommodate an employee's religious beliefs "in a manner which will reasonably preserve that employee's employment status, *i.e.*, compensation, terms, conditions, or privileges of employment." Id. at 776.

Plaintiff argues that the proposed accommodation was unreasonable, and that agreeing to the terms of Defendants' Accommodation Form would have waived her Title VII rights. Plaintiff largely objects to the terms of the Accommodation Form because some of the terms—namely, terms requiring face masks and frequent PCR testing—were inconsistent with Plaintiff's own proposed accommodations. However, an employer is only obligated to accept an employee's proposed accommodations when the employer's own accommodation fails to remove the employee's religious conflict. Am. Postal Workers

Union, 781 F.2d at 776. Plaintiff does not allege a religious conflict with the terms of Defendants' proposed accommodation. Rather, Plaintiff's objections appear to be secular in nature. An employer is not required to accept an employee's proposed accommodation when "the employee rejects an accommodation posed by the employer solely on secular grounds." Id.

Plaintiff's contentions with the terms of Defendants' proposed accommodation appear to be unrelated to her religious conflict with receiving COVID-19 vaccination. For instance, Plaintiff objects to questions pertaining to Plaintiff's vaccination history and to the duration of Plaintiff's religious beliefs. Plaintiff further objects to the number of characters allotted on the Accommodation Form for an individual requesting an exemption to explain their religious beliefs. The Court agrees with Plaintiff that the 500-character limit is unnecessarily restrictive and would make it exceedingly difficult for an applicant to express the details and sincerity of their beliefs. However, Plaintiff never submitted the Accommodation Form, and so Plaintiff's answers to those questions were not used to deny her an accommodation. Consequently, the Court will not scrutinize the questions asked in the Form.

Plaintiff alleges that agreeing to the terms of the Accommodation Form would have forfeited Plaintiff's Title VII rights, but Plaintiff does not plausibly allege how. The courts have been clear that "a reasonable accommodation need not be on the employee's terms only." Am. Postal Workers Union, 781 F.2d at 777. The Court finds that Defendant's proposed accommodation constitutes a good faith effort on the part of Defendant to reasonably accommodate Plaintiff's religious objections to COVID-19 vaccination. See Anderson, 589 F.2d at 401. However, for secular reasons, Plaintiff did not utilize the means to an accommodation offered by Defendant, even when informed that it was mandatory in order to be considered for an exemption. Consequently, Plaintiff did not make a good faith attempt to resolve the conflict "through means offered by the employer" and did not fulfill her duty to cooperate. Am. Postal Workers Union, 781 F.2d at 777; see also Heller, 8 F.3d at 1440.  As such, Plaintiff has not plausibly stated a failure to accommodate claim under

Title VII.

## 2. Disparate Treatment

Pleading a disparate treatment claim requires the Plaintiff to show that "(1) [s]he is a member of a protected class; (2) [s]he was qualified for her position; (3) [s]he experienced an adverse employment action; and (4) similarly situated individuals outside [her] protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." Peterson, 358 F.3d at 603; see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). The Court finds that Plaintiff has not pleaded a plausible claim of disparate treatment.

The Court previously found that Plaintiff had adequately pleaded the second and third elements of a disparate treatment claim but had not pleaded the first element. The Court interpreted Plaintiff's complaint as alleging that nonvaccinated individuals were a protected class, which is not the case under Title VII. By amending and adding exhibits to supplement her Complaint that describe her Christian faith, Plaintiff has now adequately pleaded the first element. The Court thus finds that Plaintiff, as a practicing Christian, is a member of a protected class.

The fourth and final element requires that Plaintiff plausibly allege that individuals outside her protected class were treated more favorably, or other circumstances give rise to an inference of discrimination. See Peterson, 358 F.3d at 603. Defendants argue that Plaintiff has not presented facts which would allow the Court to reach the conclusion that non-Christians were treated more favorably by Defendants than Christians. (Id.) The Court agrees. Plaintiff only alleges that vaccinated employees were treated more favorably than unvaccinated employees because unvaccinated employees were subject to additional measures to prevent the spread of COVID-19. Plaintiff has not alleged facts sufficient to suggest that this amounts to disparate treatments of Christians, or more favorable treatment of non-Christians. As such, the Court finds that Plaintiff has not pleaded a plausible claim of disparate treatment on the basis of religion.

### B. Retaliation

Plaintiff's second cause of action alleges retaliation under Title VII. For this claim, Plaintiff must show that: (1) she engaged in protected activity, (2), she suffered an adverse employment action, and (3) the two are causally linked. See Porter v. Cal. Dep't of Corr., 419 F.3d 885, 894 (9th Cir. 2005). To establish a causal connection between her protected activity and the adverse actions, a plaintiff may allege direct or circumstantial evidence from which causation can be inferred, such as an employer's "pattern of antagonism following the protected conduct," id. at 895, or the temporal proximity of the protected activity and the occurrence of the adverse action. Pardi v. Kaiser Found. Hosp., 389 F.3d 840, 850 (9th Cir. 2004); Bell v. Clackamas Cnty., 341 F.3d 858, 865 (9th Cir. 2003).

As with before, Plaintiff has adequately pleaded the first two elements of a retaliation claim. Plaintiff filed a claim with the EEOC—a protected activity—and then suffered the adverse employment action of termination. The issue is whether Plaintiff has plausibly alleged that the two are causally linked.

Plaintiff's Exhibit H, attached to her FAC, shows that—after some back-and-forth through e-mails regarding the Accommodation Form—Plaintiff informed Defendants' Preboarding Coordinator Pang Her on March 23, 2022 that Plaintiff would file a charge of discrimination to the EEOC. (Doc. 19 at 61). Plaintiff received a response on March 25 from Sarah Lee, a Senior Recruiter for Defendant Mayo Clinic Arizona, informing Plaintiff that Plaintiff was required to complete the Accommodation Form, and failure to complete the form would be considered a "back out of hire." (Id. at 64). A subsequent e-mail from Sarah Lee stated that "I will be plan [sic] to process the back out of hire next week unless I hear that you plan to complete the form." (Id. at 66).

Although the temporal proximity of Plaintiff's protected activity and her termination support Plaintiff's retaliation claim, the e-mails suggest that Plaintiff's refusal to fill out the Accommodation Form, rather than Plaintiff's filing of an EEOC charge, was the cause of her termination. It is apparent that Defendants' policy required employees to either receive COVID-19 vaccination or obtain an exemption from that policy. When

Plaintiff refused to do either, Defendants warned Plaintiff that she could be terminated. Plaintiff has not plausibly alleged that the filing of her EEOC complaint and her termination are causally linked; as such, the Court finds that Plaintiff has not pleaded a prima facie case of retaliation.

### C. Pregnancy discrimination

Plaintiff's final claim alleges that Defendants discriminated her based on her pregnancy. (Doc. 19 at 16). Under the Pregnancy Discrimination Act, "for all Title VII purposes, discrimination based on a woman's pregnancy is, on its face, discrimination because of her sex." Newport News Shipbuilding & Dry Dock Co. v. EEOC, 462 U.S. 669, 684 (1983). Therefore, to establish a prima facie case of pregnancy discrimination, Plaintiff must plead a prima facie case of sex discrimination, showing that: (1) she belongs to a protected class; (2) she was qualified for her position; (3) she was subject to an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably." Davis v. Team Elec. Co., 520 F.3d 1080, 1090 (9th Cir. 2008). These are the same elements as those of Plaintiff's disparate treatment claim.

The Court agrees with Defendants that Plaintiff still has not pleaded a plausible claim of pregnancy discrimination. Plaintiff's FAC does not differ significantly from Plaintiff's initial Complaint with regards to this claim, and the Court dismissed Plaintiff's initial Complaint because Plaintiff failed to allege the fourth element of a prima facie case. Plaintiff's FAC does not adequately allege that individuals outside her protected class were treated more favorably by Defendants. Plaintiff's pleadings show that Plaintiff and Defendants communicated about the exemption form well before Plaintiff notified Defendants of her pregnancy, and Plaintiff was ultimately terminated due to her refusal to fill out the online form. There is no indication in the pleadings that Plaintiff's pregnancy was a factor in her termination. Because the factual allegations do not allow the Court to draw any reasonable inference that Defendants are liable for pregnancy discrimination, the Court therefore grants Defendants' Motion to Dismiss as it relates to Plaintiff's Title VII claim of pregnancy discrimination.

### D. Proper Defendant

Defendant Mayo Clinic continues to maintain that it is not a proper defendant to this case because Plaintiff was hired by Mayo Clinic Arizona, a separate corporate entity. (Doc. 25 at 16–17). Because the Court dismisses Plaintiff's FAC without leave to amend, the Court need not address whether Defendant Mayo Clinic is a proper defendant.

### IV. CONCLUSION

The Court finds that Plaintiff has not stated plausible claims under Title VII. The Court therefore grants Defendants' Motion to Dismiss and dismisses Plaintiff's First Amended Complaint without further leave to amend.

Accordingly,

**IT IS HEREBY ORDERED granting** Defendants' Motion to Dismiss. (Doc. 25).

**IT IS FURTHER ORDERED dismissing without prejudice** Plaintiff's First Amended Complaint. (Doc. 19).

**IT IS FURTHER ORDERED directing** the Clerk of Court to terminate this case.

Dated this 15th day of December, 2023.

_____
Honorable Stephen M. McNamee
Senior United States District Judge